Case number 19-1781, Joy Eberline v. Douglas J Holdings Inc at all, or arguments not to exceed 15 minutes per side. Mr. Matthew T. Nelson for the appellate. Good morning Mr. Judge. Judge Cole and you may proceed, enter your appearance and proceed. Thank you, Your Honor. Good morning, this is Matthew Nelson on behalf of the Douglas J defendants. I would like to reserve four minutes for rebuttal. May it please the court. The issue before the court this morning is how the primary beneficiary test should be applied to decide the threshold question of whether an employment relationship exists under the FLSA. As this court explained in Laurel Brook, the primary beneficiary test is a specific application of the economic reality analysis that courts apply in all contexts to decide whether an employment relationship exists under the FLSA. And in every application, the economic reality test considers the totality of the circumstances of the parties relationship. The district court's analysis here goes astray because it starts in the middle and then goes back to the beginning. The district court begins by identifying certain... Counselor, this is Judge Stranch. In Laurel Brook, weren't the activities considered, the students work in the kitchen, housekeeping, and in the sanitarium, and not other activities such as traditional classroom instruction? Your Honor, yes, Your Honor. In Laurel Brook, the court considered only the specific vocational activities and not the classroom instruction, although it's certainly not clear from Laurel Brook that the question was ever raised as to what the appropriate context was. It simply wasn't in dispute in that case. But doesn't it show that what we examine is what the plaintiff challenges? No, Your Honor, I don't think so because the fact of the matter is that in each case that's been addressed under the economic realities test, the courts have always said that it is a totality of the circumstances test. So the plaintiffs can't get around the totality of the circumstances. Sure, but the question, Counselor, is the totality of what circumstances? And in Laurel Brook, we said it's the totality of the circumstances challenged by the plaintiff. Isn't that correct? Your Honor, I don't believe it is. I believe what this court said in Laurel Brook was that it was the totality of the circumstances of either the business activity or the relationship at various points in the opinion. And the business activity analysis comes directly from earlier case law, including this court's decision in Donovan v. Brandel. All of the economic activity was encompassed within the scope of the analysis. So it's not just the individual tasks that are being challenged, but the relationship itself has to be an employment relationship. Only after an employment relationship is established is it appropriate to then look at the specific tasks to determine whether they're compensable. Well, I'm struggling with that answer because you've already conceded that Laurel Brook only addressed students' work in the kitchen, housekeeping, and sanitarium and did not consider in the totality of the circumstances the activities such as traditional classroom instruction. It seems to me that exactly what we did is say, what is this plaintiff challenging? And then we look at the totality of the circumstances for those challenged activities. Your Honor, with regard to Laurel Brook itself, the specific program there was split between four hours in the classroom and then four hours doing vocational activities. So I want to be clear to say that what Laurel Brook considered was the full gamut of the vocational activities, the four hours of vocational training and not the four hours of the classroom activity. Exactly. It segmented the relationship, didn't it? No, Your Honor. I don't think it's fair to say that it segmented the relationship, at least not in the way that the plaintiffs are suggesting here, whereby certain tasks can be taken out of the vocational context and considered standing on their own instead of being placed within the framework of the entire relationship. And I think here the analysis is perhaps best seen in terms of the related context of internships. In an internship challenge case, if the putative employer is providing classroom-based training as well as the educational or as well as the vocational aspect, certainly the court would consider in the context of the internship all of the activities, including the classroom time. The same thing should be true in an integrated vocational context such as this one, where the entire purpose of the education is to provide a vocational training, which includes both the classroom time and the in-clinic, in-salon time. Is that what occurred in Benjamin v. B&H in the Ninth Circuit? Your Honor, I believe that the Benjamin case didn't address the classroom time. Again, I'm not sure that the issue arose there. I think that the Seventh Circuit did address the classroom time in the Hollins case with regard to the fact that the plaintiffs there and here are paying for the totality of the educational program, not just the classroom time. And certainly the classroom time is also referenced in the Second Circuit decision in Velarde. Ultimately here, Your Honor, even if this court was to say, we're not going to consider the classroom time, we're only going to consider the time in the salon, I believe that the district court's analysis would still fail. It would still be incorrect because it fails to consider the totality of the circumstances of the time spent in the salon itself. It extracts out certain activities before applying the primary beneficiary test. And that simply is inconsistent with all of the case law in this area. In fact, none of the circuits who have addressed this issue have applied that analysis. None of them have purported to engage in some sort of segmentation specific to specific tasks that are challenged by the plaintiffs. All of them have considered the full scope of the relationship with the students either in the salon context or also including the classroom context. That approach that's been adopted by the other courts is consistent with Laurelbrook and it's also now been adopted by the Department of Labor as the national standard for its enforcement activities. Consequently, Your Honors, we submit that what the court ought to do here is apply the Laurelbrook primary beneficiary standard, including the various factors that other courts have identified, most notably and importantly, I think, the lack of expectation of compensation and determine that summary judgment here is appropriate in favor of the salons because, excuse me, of the school because on the whole of the relationship, the students are plainly the primary beneficiaries. Mr. Nelson, I'm sorry to interrupt you. I take it that you're asking the court to apply Laurelbrook and the primary beneficiary standard at this level. Would it not make more sense, if we accept your argument, that we would remand the matter to the district court and have the district court sort through the various tasks to determine how they fit within the Laurelbrook and the primary beneficiary tasks? Excuse me, Chief Judge Cole, we lost Judge Batchelder. Okay. Judge Cole, I will wait to respond until Judge Batchelder is back on the line. That would be fine, yes, please. Yes, yes, definitely. Stand by. Your host is in a private conference. If I may take this downtime, thank you for accommodating us with the telephonic arguments. Oh, you're welcome. It makes sense for everyone given the circumstances. I think I can speak for my colleague on the other side of the aisle as well that we appreciate the opportunity to address the court. Judge Batchelder is on the line. So, Your Honor, before the temporary interruption, you asked if it might make more sense to remand the case to the district court to apply the primary beneficiary test, as we proposed, if the court reaches that conclusion, instead of applying it at this level in the first instance. And certainly that is well within the court's discretion. We believe that the record is such, even with the district court's conclusions in this case already, that the answer is one that is a matter of law that the court could reach. But if this court decides to remand, obviously that would be within the court's discretion as well. I did want to comment briefly. I'm sorry, Your Honor. No, no, you may proceed. I did want to comment specifically with regard to both the GLAT factors and then the Department of Labor standard, how it supplements Laurelbrook in a way that's consistent with the precedent, both of this circuit and the Supreme Court, in this area of the economic reality test. In Alamo and in Cathedral Buffet, so Alamo from the U.S. Supreme Court, Cathedral Buffet from this court, the courts emphasize the fact that the expectation of compensation is a crucial factor in determining whether an employment relationship exists. Here, there's no question that there was no expectation of compensation, but that factor, which is so important in other contexts, should also be part of the analysis in the context of determining whether an employment relationship exists in the vocational school context. Unless this court has further questions, I will yield the balance of my time. Okay. Thank you, Mr. Nelson. We'll hear next from Mr. Filo. That's correct. Thank you, Your Honor, and good morning to my police and court. I'm John Filo from the Sugar Law Center for Economic and Social Justice, and I'm here on behalf of all plaintiffs. I'd like to begin by noting that every case in the student-learner context is highly fact-specific. The outcome is determined by the facts presented, not by an overall labeling of the relationship at issue, but by looking at that specific activity that is at issue. The undisputed facts in this case and the application of the primary benefits test is stated in law, but require that partial summary judgment in favor of the plaintiffs be affirmed. In every case, the court examines the totality of the circumstances to determine whether the employer-employee relationship exists with respect to the worker activity at issue. Factors that don't inform whether that relationship exists during the performance of that activity aren't considered. That's the crux of the economic realities test. And we see under the Fair Labor Standards Act, in cases I brought, they're brought for specific activity. We ask whether downing and doffing of equipment is compensable. We ask whether a certain downtime, whether a lunch period, whether a break, whether traveling to or from the gate to your work site, your actual workplace, is considered compensable. We don't look at that overall relationship and say, this is one of employer-employee, therefore, every activity underneath it is covered. We look to it in that specific activity, and it is no different in the student-learner context. Now, the primary beneficiary test has been developed, and the Sixth Circuit has its sort of particular primary benefits test, but it's one of the first. And it's followed in the Fifth Circuit, followed in the Eighth, I believe it's followed in the Seventh as well, where they have an overall primary beneficiary analysis, but they don't look to specific factors. That's the Second Circuit and I believe the Eleventh, and the Ninth is a little bit uncertain what they do. The Tenth still adheres to the old Department of Labor six-factor test rather than the new seven-factor test that GLAAT had put into place and that Schumann followed in the Eleventh. When you look at the GLAAT and the old Department of Labor test, they're very substantively similar. There's only one or two that can be said to be a nuanced differentiation from the prior Department of Labor test. And those two factors are really subsets of, I believe, it's factor one from the Department of Labor test. In this case, there's no dispute that Laurelbrook is controlling. There's also no genuine dispute that Laurelbrook test examines who is the primary beneficiary of the work performed. The decision itself is replete with examples, and it's specifically looked at at 521 of Laurelbrook. The district court, it recognized the district court applied a test and asked whether which party receives the primary benefit of the work that the student performs. And then the Laurelbrook court said that's the correct test and the district court applied it correctly. Also in Laurelbrook, the court looked at the Portland Terminal case from which these primary beneficiary tests have been developed. And it noted specifically, while the Supreme Court found various other facets of the relationship significant, in our view, its decision rested on whether the trainees received the primary benefit of the work they performed. That's at 526. Now, very slight confusion arises because the Laurelbrook court at times is using the terms work and relationship interchangeably. However, what's clear is that when they're referring to the relationship, they're referring to whether an employee-employer relationship exists for the work at issue. And that's evident at page 529 where the court sort of summarizes what it's doing and it sort of is rationed out. And it says that the purported employer receives the primary benefit from a working relationship with a child, and they were children in Laurelbrook as opposed to the adults that are at issue in this case. It is likely that the child is in competition with adults and, therefore, compensation is required. If, however, a child receives the primary benefit of the work performed, the child's presence does more harm to the employer's operations and compensation, consequently, isn't required. I don't think there's any genuine dispute that Laurelbrook court recognizes two factors as most important. That's educational value and whether the students receive educational value from the work or whether the work displaces paid employees. Now, when we look at the Laurelbrook court's analysis in this case, it's consistent with Laurelbrook. The Laurelbrook court rejected a mechanical application of predetermined factors, embraced an approach that looks at the facts in each case to determine who's the ultimate beneficiary of the student's work. Necessary to the district court's finding in this case was that the work performed by the students provides no educational benefit to the students. Can we back, Counselor? This is Judge Strang. Let me just ask you a question. How do you define the category of work on which that analysis is undertaken? It seems to me the dispute is between whether you can look at a certain category of work that's challenged. I believe your opposing counsel insists that it must be the entirety of the relationship. In other words, if it's a school such as this one, you have to include classroom and clinic time in the determination of primary beneficiary. How do you practically define what quantum or what type of work is at issue and the test is to be applied to? Well, I think that's a good question. And it's been developed in Fair Labor Standards law fairly quite extensively. Now, albeit outside the context of student learners because other cases arise more frequently than student learner cases. But you look at the activity at issue. Now, if it's a de minimis amount of time, then you don't use that activity. Then it's not compensable. So we're not going to fly spec every five-minute segment. But it has to be a substantial amount of time. Once you cross that threshold, then you look to see if it's compensable. Is it work or is it an employer-employee relationship for that work? Or is it somehow taken outside of compensation of the Fair Labor Standards Act? And I think when you look at each of these cases, that's exactly what's done. It was mentioned that classroom and, you know, was classroom looked at in the context of any other cases. No, it really wasn't. When you look at Benjamin, what it's looking at is whether there's classroom training that's integrated with the activity for which compensation is sought. In that case, Benjamin found that the activity was integrated with coursework. Now, and it was the same in Hollins. And in Hollins, both Hollins and Benjamin, what they're looking at and when they address the – when they talk about sort of manual labor, cleaning tasks, janitorial work, those cases did not distinguish the cleaning-type work from sanitation work. And both cases, or particularly Hollins, recognized, hey, sanitation work's part of their training. Now, that's very different from the facts in this case, where we made – we proved, and it was uncontested, the defendants did not dispute this substantively, that the cleaning work they're performing is not part of the sanitation curriculum. And you can see that in various exhibits. The Milates book, which is the text the defendants use, they have, you know, two chapters, perhaps, that cover sanitation. But it is not these general cleaning tasks. It has to do with disinfecting, communicable diseases, you know, what tools are used for what. This is Judge Strange again. Your opposing counsel seems to suggest that the DOL has adopted a different test, or perhaps he's saying applied it differently than what you suggest. Is that accurate? I don't believe that's accurate, and I would, you know, the court itself can look at the two tests. When you put them side-by-side, it's only, I think, as long as three and four that are nuanced difference from the old, you know, DOL factors. At least, or what is it, five of the factors are perfectly comparable to five of the six factors in the DOL test. Now, those two that are nuanced a little difference have to do with, is the internship tied to the formal education and receipt of academic credit? Does it accommodate the academic commitments? Well, you could really argue those are part of the old DOL test, yeah. Factor number one, whether it's similar to training and what occurs in an educational environment. I think it's a tough sell to say that the new test is quite a bit different or, you know, reworks it. Some of the factors, at least three or four of the factors are identical. It only gets into some of the nuances, and those nuances are arguably captured in the factors of the DOL test. Mr. Filo, I've got... Oh, yes. Yeah, Mr. Filo, I've got a question about the test that was actually applied by the district court, and get your thoughts on that. Is it fair to say that the district court applied the Laurel Brooks test, but really it was a hybrid of the Laurel Brooks test, to the extent the district court incorporated some reasoning, maybe it's Victor, from the 11th Circuit, that Schumann case, and asked the question whether Douglas J. took unfair advantage of the student's need to complete their educational program, and ultimately found that it had. So, really, did the district court apply what I would call a Laurel Brooks hybrid? Something that is apparently not applied by any other court? That's a very fair question. I would say it is not a hybrid analysis. What it did, it actually added an additional factor that perhaps, you know, that Laurel Brooks hadn't recognized, but does not displace any part of Laurel Brooks, it's consistent with Laurel Brooks. And I'll say that because of this. The lower court, in this case, did specifically look at whether the students received an educational benefit. And they, in the court, found none. Therefore, it then went to the Laurel Brooks test to see if that work was unfair. But the lower court, in this case, looked at the specific factors in Laurel Brooks. One, did the activity provide educational benefit to the students? Two, was there displacement? And it also looked at whether the work expedited the work of the defendant's staff, or did it impede it? Well, clearly, it expedited it in this case. It wasn't like Laurel Brooks or Baptist Hospital or any of the other cases, or Portland Terminal, where the students' performance of the tasks that issue impeded the instructor's ability to perform those same tasks, or the paid staff to be able to do those things. In this case, the district court looked at those two Laurel Brooks factors and found in favor of the plaintiff. And I think on the facts, it's hard to come to any other conclusion. But then it added that sort of, it also looked at whether the time was de minimis or substantial. And it also then looked at sort of the fairness factor. I will note that in both Schuman, well, in Schuman, they cite to Laurel Brooks. They don't look at their approach as inconsistent with Laurel Brooks. Now, whether it is or isn't, I guess that's for the court to decide. But I think Schuman was looking at it and did not view that as inconsistent. Hollins is the same, from the Seventh Circuit. Hollins Court in the Seventh Circuit appears to adopt the Eleventh Circuit approach without the Glock factors. And it approvingly cites of Schuman. Now, the district court in that case, again, cited the Tholos and Laurel Brooks, and the Hollins Court approved of what the district court had done. So I think that Schuman's analysis is not in conflict with Laurel Brooks. It's sort of additional factors that are looked at. Because in this case, I think it's the district court very clearly looked at, you know, whether there was educational benefit, and they only went to the Schuman analysis after finding that there was no educational benefit. Pardon me, Chief Jitko? Yes. We lost a bachelor. I'm going to call her on alternate numbers. Stand by. Okay. Okay, counsel, let's just pause for a moment until we can reconnect. Your host is in a private conference. And Chief Judge Cole, I just want to advise that we do pause the timer every time that an interruption does occur. Yes, thank you. The bachelor is on the line. Okay, I think you may proceed. Thank you. So just to wrap my thoughts up on that, what the district court here did was, you know, supplemental application of Schuman to the Laurel Brooks factors, and that's not inconsistent with Laurel Brooks, which says you can look at other factors and consider further. I would like to point out in some of the segmentation, I think it's absolutely correct that Laurel Brooks segmented activity, but so did Baptist Hospital, and particularly look at Baptist Hospital. The students were vocational students, but the only time that was looked at was the students' time at Baptist Hospital. The students were rotated through various local hospitals. Baptist Hospital was not the only one. They were each of these students. They weren't assigned only for part of their time were they assigned to a single hospital. The students were assigned to other local hospitals and rotated through. However, the only time that was looked at was the time at Baptist Hospital. They had segmented that time from all the other clinical training that the students do in that case. Finally, I'd say that the defendant's totality test is unworkable, and it calls into question the Donning and Doffin cases and all other cases. I think I'm out of time, so I'll leave it there, but if there's further questions, I'm happy to answer. Okay, thank you, Mr. Filo. Mr. Nelson, you have your four minutes of rebuttal time. Thank you, Your Honor. I want to start right where Brother Counsel left off, and that is with regard to the Donning and Doffin cases, because I think that that points to the crux of the problem with the plaintiff's approach. The Donning and Doffin cases and the other compensability of time cases that the plaintiffs are relying on all presume an employment relationship already exists. That's not the issue here. The issue here is whether an employment relationship exists. And to decide if a student is, in fact, an employee, you have to look at the totality of the circumstances. That's true in this context, and that's true in all the other contexts where this question of whether an employment relationship actually exists comes up. And we cited a whole slew of cases from this circuit where that issue is addressed in various contexts, including with regard to volunteers and independent contractors. What the courts do not do in those cases is take a look at the totality of the relationship, chop up the relationship into various tasks, and say that a person is an employee for the purposes of some tasks, and an independent contractor or a volunteer for the purposes of other tasks. The same should be true here. You can't be both a student and an employee during the same time period in the same location with regard to the same subject matter. Here, what the district court did was say that during a given class day, a given day while the student was in the salon, the student was both performing the, it was in the relationship of student with regard to cutting hair and the like, and then with regard to other activities that were interspersed with that cutting of hair and other educational activities, was an employee with regard to certain other tasks. That's just not how this analysis works under the economic reality test in all of the other contexts where it applies, and it should not be applied that way here. Consequently, applying an all-or-nothing approach, which is consistent with the rest of the case law under the FLSA, poses no threat whatsoever to the Donning and Dauphin cases where someone's already an employee, or whether a meal time is paid, or the other issues that arise. Those are all second-level questions in the FLSA analysis. Usually in cases, of course, the question of whether a person is an employee isn't disputed, and where it's disputed is an all-or-nothing determination. Next, I want to turn to whether what the district court did was in fact a hybrid of Laurelbrook. The district court frankly acknowledged that she was stepping out where Laurelbrook didn't provide guidance, and in fact that's why the question was certified, and presumably that's why this court also took the issue. What the court did was inconsistent with Laurelbrook because it separated that relationship into two different sections, as opposed to treating the relationship as a whole, even if the relationship as a whole is limited to the time spent in the salon, as opposed to also encompassing the classroom activity. Finally, I want to turn to the contention that the new DOL standard, which adopts the GLAT factors, is just the same as the old DOL standard. In fact, there's a significant difference between the two. The old DOL standard, the one that's been rejected by almost every circuit in the country, required that for a relationship not to be one of employment, the vocational school or the learning provider had to demonstrate each of the factors. If they didn't meet any one of the factors, it was an employment relationship. The new standard is to balance these factors, and the very preamble to the text here shows that the DOL is looking at this as an all-or-nothing standard. Unless the court has any further questions, I thank you for the opportunity to address the court this morning. Okay, well thank you Mr. Nelson and Mr. Filo. We appreciate your arguments this morning. We'll take this case under submission, and our deputy clerk can call the next case.